## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER AARON VASS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | **NO. 5:21-CV-00373-MTT-CHW** |
| | : | |
| **THE STATE OF GEORGIA,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## ORDER AND RECOMMENDATION

Plaintiff Christopher Aaron Vass, a prisoner currently confined at the Baldwin State Prison in Hardwick, Georgia, has filed a *pro se* civil rights complaint seeking relief pursuant to 42 U.S.C. § 1983 (ECF No. 1).   Plaintiff has also moved for leave to proceed *in forma pauperis* in this case (ECF No. 2), for appointed counsel (ECF No. 5), and to be provided documents (ECF No. 8).   He has additionally filed a motion objecting to the referral of this case to a United States Magistrate Judge (ECF No. 11).   For the following reasons, Plaintiff's motion to proceed *in forma pauperis* is **GRANTED**, and his failure-to-protect claims against Defendants Whipple, Berry, Whomble, and Martin shall proceed for further factual development.   It is **RECOMMENDED**, however, that Plaintiff's remaining claims against all other Defendants named in this action be **DISMISSED without prejudice**.   Plaintiff's motions for appointed counsel and objecting to referral are **DENIED**, and Plaintiff's motion for documents is **DENIED as premature**.

**MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a).   Because it appears Plaintiff is unable to pay the cost of commencing this action, his application to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

Even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee.   28 U.S.C. § 1915(b)(1).   If the prisoner has sufficient assets, he must pay the filing fee in a lump sum.   If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee.   28 U.S.C. § 1915(b)(4).   In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I.     Directions to Plaintiff's Custodian

Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee.   The clerk of court is **DIRECTED** to send a copy of this Order to the Coastal State Prison.   It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the

sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full.  28 U.S.C. § 1915(b)(2).  In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.  It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.    Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.  Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated.  The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments.  Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## MOTION FOR APPOINTED COUNSEL

Plaintiff seeks appointed counsel (ECF No. 5).   As this is Plaintiff's first request for counsel, the Court advises Plaintiff that "[a]ppointment of counsel in a civil case is not a constitutional right." *Wahl v McIver*, 773 F.2d 1169, 1174 (11th Cir. 1986). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Id*.   In deciding whether legal counsel should be provided, the Court considers, among other factors, the merits of Plaintiff's claim and the complexity of the issues presented. *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989).[1]   But "[t]he key" in determining whether appointed counsel is warranted "is whether the *pro se* litigant needs help in presenting the essential merits of his position to the court."   *Nelson v. McLaughlin*, 608 F. App'x 904, 905 (11th Cir. 2015) (per curiam).

In accordance with *Holt*, and upon a review of the record in this case, the Court notes that Plaintiff has set forth the essential merits of his claims, and the applicable legal doctrines are readily apparent.   As such, Plaintiff's motion for appointed counsel is **DENIED**.   Should it later become apparent that legal assistance is required in order to avoid prejudice to Plaintiff's rights, the Court, **on its own motion**, will consider assisting him in securing legal counsel at that time. Consequently, there is no need for Plaintiff to

---

[1] The federal *in forma pauperis* statute authorizes courts to "request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1). The statute does not, however, provide any funding to pay attorneys for their representation or authorize courts to compel attorneys to represent an indigent party in a civil case. *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989).

file additional requests for counsel.

## MOTION TO OBJECT TO REFERRAL

Plaintiff has also filed a motion in which he objects to the referral of this case to the undersigned Magistrate Judge, contending that "[t]his case needs to be heard by the district judge because of the severity of this situation."   Mot. Obj. Referral Order 1, ECF No. 11. Federal law permits a district judge to "designate a magistrate judge to hear and determine any pretrial matter before the court," and to issue a report and recommendation on any matters that happen to be dispositive (such as a motion to dismiss or for summary judgment).   28 U.S.C. § 636(b)(1)(A).   A district judge's referral to a magistrate judge under § 636(b)(1)(A) does not require the parties' consent.   *Cf.* 28 U.S.C. § 636(c)(1) (permitting parties to consent to allowing a magistrate judge to "conduct any or all proceedings in a jury or nonjury civil matter and to order the entry of judgment in the case").   Rather, the "nonconsensual referral[] of pretrial but case-dispositive matters under § 636(b)(1)" leaves the district judge "free to do as it sees fit with the magistrate judge's recommendations[.]"   *Roell v. Withrow*, 538 U.S. 580, 585 (2003).

The District Judge assigned to this case has the authority to refer the case to the Magistrate Judge and does not require Plaintiff's consent to do so.   Plaintiff's motion "objecting" to the referral of this case to the Magistrate Judge (ECF No. 11) is therefore **DENIED.**   Plaintiff may object to proposed findings and recommendations of the Magistrate Judge as provided in 28 U.S.C. § 636.

## MOTION FOR DOCUMENTS

Plaintiff has also filed a motion requesting that Defendants produce certain documents pursuant to Federal Rule of Civil Procedure 34.   As noted in the instructions to Plaintiff below, the Defendants must either answer or file a dispositive motion before Plaintiff may begin discovery in this action.   As such, Plaintiff's motion for documents (ECF No. 8) is **DENIED as premature**.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

### I.      Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.   *See* 28 U.S.C. § 1915A(a).   Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.   Both statutes apply in this case, and the standard of review is the same.   When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.   *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).   *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'"   *Hughes*, 350 F.3d at 1160 (citation omitted).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §1915A(b).

6

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'"   *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted).   The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'"   *Id.* (citation omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'"   *Twombly*, 550 U.S. at 555 (citation omitted).   In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.   *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal.   *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.    Factual Allegations

Plaintiff's claims arise from his detention at the Baldwin State Prison ("BSP"). Compl. 5, ECF No. 1.   According to the Complaint, the conditions at BSP are extremely violent.   *Id.*   Inmates often have drugs and weapons, and Plaintiff contends he has "witnessed multiple assaults/deaths by stabbing(s)" and inmates are often "caught without knives and not punished."   *Id*.   Plaintiff has also personally "been assaulted more than once, hit with locks across [his] face and head and even had urine and 'BM' thrown at [him]."   *Id.* at 6.

Plaintiff also alleges that he has notified prison staff "multiple times that [he is] queer" but has been "denied . . . safe housing."   *Id.* at 6.   As a result, Plaintiff "has been sexually assaulted many times" and has "been forced to wash clothes/serve inmates and perform sexual acts for protection."   *Id.*   As a result of these attacks, Plaintiff suffers from "physical damage to [his] skin and body" which has caused him to lose control over his urine and bowels, among other things.   *Id.*

Plaintiff also contends that inmates do not receive the hour of outdoor recreation required by Georgia Department of Corrections policy, and he states that the dorms are "infested with black mold, roaches, para[s]ites, that come in through shower drains freely that breed house flys [sic]."   *Id.*   Plaintiff further alleges that he has "been denied transfer to a medium security facility that offers vocational training" as well as "positive character recommendation(s)," "proper religious services," education, and medical treatment.   *Id.* Plaintiff thus alleges that his treatment at BSP violates his constitutional rights.   As a

result, he seeks monetary compensation and injunctive relief. *Id.* at 7.

### III.   Plaintiff's Claims

A. <u>Claims against the State of Georgia and the Georgia Department of Corrections</u>

Plaintiff's claims against the State of Georgia and the Georgia Department of Corrections ("GDC") are subject to dismissal.   The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   Thus, "[t]he Eleventh Amendment bars suits against a state for alleged deprivations of civil liberties unless the state has waived its immunity or 'unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.'"   *Robinson v. Ga. Dep't of Transp.,* 966 F.2d 637, 640 (11th Cir. 1992) (quoting *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989)).   The United States Supreme Court has "concluded that Congress, in passing § 1983, did not intend to override the immunity guaranteed to the states by the Eleventh Amendment." *Id.* (citing *Quern v. Jordan,* 440 U.S. 332, 341 (1979)).   Moreover, the State of Georgia has not waived its sovereign immunity with respect to cases brought in federal court.   *See* Ga. Const. art. I, § II, para. IX(f) ("No waiver of sovereign immunity shall be construed as a waiver of any immunity provided to the state . . . by the United States Constitution."); *see also Robinson*, 966 F.2d at 640.   The State of Georgia should therefore be dismissed from this action.

The GDC is a state entity entitled to Eleventh Amendment immunity.  *See Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars [the plaintiff's § 1983] action against the Georgia Department of Corrections . . . .  This Eleventh Amendment bar applies regardless of whether the plaintiff seeks money damages or prospective injunctive relief."); *see also Will*, 491 U.S. at 70 (states and governmental entities that are considered "arms of the state" are not considered "persons" capable of being sued under § 1983).  Plaintiff's claims against the GDC are therefore also subject to dismissal.

B.  Eighth Amendment Failure-to-Protect Claims against Individual Defendants

Plaintiff's Complaint gives rise to a claim that Defendants failed to protect him from being assaulted at BSP.  This type of claim is generally cognizable under the Eighth Amendment to the United States Constitution.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prisoner asserting an Eighth Amendment failure-to-protect claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation.  *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).  To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk.  *Id.* at 1332.

Plaintiff has alleged that Defendant Whipple, in particular, knew that Plaintiff was a particularly vulnerable inmate who had been "constant[ly]" sexually harassed by at least

10

one particular inmate.  *See, e.g.,* Compl. 6, ECF No. 1.  Despite Plaintiff's repeated complaints to Defendant Whipple, Plaintiff alleges Defendant Whipple refused to take action to provide Plaintiff with safe housing and in fact asked Plaintiff to dismiss his claims.  *Id.*  These allegations are sufficient to permit Plaintiff's failure-to-protect claims against Defendant Whipple to proceed for further factual development.

Plaintiff has also named three supervisory officials at the prison as Defendants in this action: Walter Berry, the BSP warden; Regina Whomble, the deputy warden of care and treatment; and Eric Martin, the deputy warden of security.  Compl. 1, ECF No. 1.  It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.  *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Rather, supervisors can only be held liable under § 1983 if they personally participated in unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation.  *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam).  A causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.*  "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."  *Id.* (internal quotation marks omitted).

11

In this case, Plaintiff has pleaded facts showing that each of these supervisory prison officials should have been on notice of the need to correct the dangerously unsafe conditions at the jail and failed to do so. Plaintiff alleges that (1) he witnessed multiple assaults and stabbings and was personally assaulted on multiple occasions; (2) he requested to be placed in isolation "numerous times" due to the dangerous conditions; (3) at least one corrections officer asked inmates to "watch her back" while she was on duty; and (4) Defendant Martin has found drugs and knives in cells but taken no action. Compl. 5-6, ECF No. 1. In addition, Plaintiff states that he has notified staff many times about the dangers he faces at BSP. *See id.* At this early stage of the litigation, the Court cannot say that Plaintiff's failure-to-protect claims against Defendants Berry, Whomble, and Martin are necessarily frivolous. As such, they shall be allowed to proceed for further factual development.[2]

## C. Eighth Amendment Conditions-of-Confinement Claims

Plaintiff also alleges that the unsanitary condition of BSP violates his Eighth Amendment rights. Plaintiff contends that the dorms are "infested with black mold, roaches, [and] paracites [sic] that come through shower drains freely that breed house flys

---

[2] Plaintiff has also submitted declarations from other inmates that appear intended to support his claims. The Court notes, however, that Plaintiff cannot represent the interests of other prisoners or seek relief on behalf of any other inmates. *See e.g., Wallace v. Smith*, 145 F. App'x 300, 302 (11th Cir. 2005) (per curiam) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975) (finding it "plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action")); *Massimo v. Henderson*, 468 F.2d 1209, 1210 (5th Cir. 1972) (per curiam) (affirming dismissal of the portion of prisoner's complaint that sought relief on behalf of prisoner's fellow inmates).

[sic]."   Compl. 6, ECF No. 1.   Plaintiff also contends that "[d]ue to the lack of staff and careless officers," prisoners "cannot get (1) one hour a day outside which is in the DOC SOP."   *Id.*   These claims are too vague and conclusory to state an actionable constitutional claim.

It is well-established that even though "the Constitution does not mandate comfortable prisons," a prisoner's claim that the conditions of his confinement constitute cruel and unusual punishment may state a claim for relief under the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).   To state a conditions-of-confinement claim, a prisoner must show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities."   *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010); *see also Brooks v. Warden*, 800 F.3d 1295, 1303-04 (11th Cir. 2015).   This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993).   The prisoner must also show that prison officials acted with deliberate indifference, i.e., that the officials knew that the challenged conditions posed an excessive risk to the prisoner's health or safety but disregarded them.   *Swain v. Junior*, 958 F.3d 1081, 1088-89 (11th Cir. 2020).

In this case, Plaintiff has failed to show that the conditions about which he complains at BSP rose to the level of a constitutional violation.  First, this Circuit has "never held that convicted prisoners have a constitutional right to outdoor exercise." *Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979), *on reh'g*, 636 F.2d 1364 (5th Cir. 1981).  Thus, "a complete denial . . . of outdoor exercise, although harsh, [does] not violate the Eighth Amendment."  *Bass v. Perrin*, 170 F.3d 1312, 1317 (11th Cir. 1999).  Plaintiff's allegations that he was deprived of outdoor exercise for some unspecified length of time therefore do not state a constitutional claim.

Plaintiff's claims that the prison is "infested" with mold and vermin also fail to state a constitutional claim.  While these alleged conditions could potentially state a claim for relief if accompanied with specific facts showing the seriousness of the alleged infestation, Plaintiff has not supplied the Court with any such facts.  Without these facts, Plaintiff has failed to show that the conditions of his confinement were objectively serious enough to state a constitutional claim.  *See, e.g., Moulds v. Bullard*, 345 F. App'x 387, 393 (11th Cir. 2009) (per curiam) (holding that prisoner's "general claim that overcrowding at [the jail] led to unsanitary conditions" did not state a conditions-of-confinement claim where prisoner "did not state any details that would indicate how 'extreme' those conditions were, and did not contend that he personally faced a health risk as a result of any of these conditions").  Plaintiff's conditions-of-confinement claims should therefore be dismissed without prejudice.

D.  Eighth Amendment Medical Treatment Claims

Plaintiff's Complaint can also be liberally construed as raising claims that Defendants failed to provide him with adequate medical care.  Allegations that jail officials were deliberately indifferent to a prisoner's serious medical needs can state a constitutional claim.  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry."  *Farrow*, 320 F.3d at 1243.  A plaintiff must first "set forth evidence of an objectively serious medical need" and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need."  *Id.*   In other words, prison officials must both "know of and then disregard an excessive risk to the prisoner."  *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).  For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted).  A "serious medical need" may also exist when "a delay in treating the need worsens the condition."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).

To the extent Plaintiff intends to raise a claim concerning his medical care, he has again failed to state a constitutional claim.  Plaintiff contends that he "suffer[s] from insomnia, hypomania, moral terror, physical and mental strain, obesity, high blood pressure, Ramsey Hunts syndrome, uncontrollable urine and bile issues and some sort of

skin condition that the prison cannot help me with."   Compl. 6, ECF No. 1.   Plaintiff

further alleges that he "bleed[s] from [his] rectum and suffer[s] from severe body pains."

*Id*.   Even if some or all of these conditions may constitute serious medical needs, Plaintiff

has failed to allege which Defendants knew of these needs and disregarded them.   Absent

such facts, Plaintiff has failed to state a claim upon which relief may be granted.   *Douglas*

*v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate

where plaintiff failed to allege facts associating defendants with a particular constitutional

violation).    Plaintiff's medical deliberate indifference claims should therefore be

dismissed without prejudice.

### E.   Denial of Transfer and Educational Benefits

Plaintiff next mentions that he has been "denied transfer to medium security facility

that offers vocational training" and that he has been denied educational services.   Compl.

6, ECF No. 1.   Plaintiff may thus be seeking to raise a claim for the violation of his rights

under the due process clause of the Fourteenth Amendment, which "prohibits any State

from depriving a person of life, liberty, or property without due process of law."

*Meachum v. Fano*, 427 U.S. 215, 223 (1976).   In order to proceed on this type of due

process claim, a prisoner must establish three elements: (1) the deprivation of a

constitutionally-protected liberty or property interest; (2) state action; and (3)

constitutionally-inadequate process.   *See, e.g., Spencer v. Benison*, 5 F.4th 1222, 1232

(11th Cir. 2021).

Plaintiff has failed to allege which named Defendant denied him these things.   His

claims could be dismissed on this basis alone.   *Douglas*, 535 F.3d at 1321-22.   Moreover, Plaintiff has not shown that he has a constitutionally-protected interest in being housed in any particular prison or to participate in rehabilitative prison programs, nor has he pleaded any facts suggesting that the state has provided him with this type of liberty or property interest.   *See, e.g., Meachum*, 427 U.S. at 225 (holding that "the Due Process Clause in and of itself" would not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system"); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (federal prisoners have "no legitimate statutory or constitutional entitlement sufficient to invoke due process" in participating in a prison's rehabilitative programs); *Velasquez v. Weinman*, 466 F. App'x 806, 806-07 (11th Cir. 2012) (per curiam) (affirming dismissal of prisoner's § 1983 claims on grounds that prisoner had no constitutional right to vocational, rehabilitative, or educational programs).   To the extent Plaintiff seeks to raise a due process claim concerning his denial of a transfer or of vocational or educational services, he has therefore failed to state an actionable claim.

F. Denial of Religious Services

Finally, Plaintiff states that he was "denied proper religious services" at BSP. Compl. 6, ECF No. 1.   The First Amendment generally protects an inmate's free exercise of sincerely held religious beliefs.   To that end, the courts have held that regulations that infringe on an inmate's constitutional rights are only valid if they are reasonably related to a legitimate penological interest.   *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).   In this case, Plaintiff has provided almost no facts about his potential First

Amendment claim.   He does not allege what religion he practices, plead any facts showing how his religious beliefs are sincerely held, or explain how the denial of "proper religious services" affected the exercise of his religion.   Nor does Plaintiff identify any named Defendant who may have been responsible for the alleged denial of religious services. Plaintiff's vague and conclusory allegation that he has been denied religious services at BSP must therefore be dismissed without prejudice.   *Twombly*, 550 U.S. at 555; *Douglas*, 535 F.3d at 1321-22.

### IV.    Conclusion

As discussed herein, Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**, and Plaintiff's failure-to-protect claims against Defendants Whipple, Berry, Whomble, and Martin shall proceed for further factual development.   It is **RECOMMENDED** that Plaintiff's remaining claims against all other Defendants named in this action be **DISMISSED without prejudice.**   Plaintiff's motion for appointed counsel (ECF No. 5) and his motion objecting to the referral of this case (ECF No. 11) are **DENIED**, and Plaintiff's motion for documents (ECF No. 8) is **DENIED as premature.**

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.   The parties may seek an extension of time in which to file written

18

objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Whipple, Berry, Whomble, and Martin, it is accordingly **ORDERED** that service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions

19

as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.   The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   The deposition of the Plaintiff, a state/county prisoner, may be taken at any

time during the time period hereinafter set out provided prior arrangements are made with his custodian.   **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.   This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.   The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed

FIFTEEN (15) requests to each party.    No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 8th day of February, 2022.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge

22