**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER AARON VASS,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:21-CV-373 (MTT)** |
| | ) | |
| **Deputy Warden ERIC MARTIN,** *et al.*, | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**ORDER**

Plaintiff Christopher Vass filed this 42 U.S.C. § 1983 action against Defendants Walter Berry, Eric Martin, and Pretrillion Whipple stemming from his incarceration at Baldwin State Prison ("BSP"). Doc. 61. Vass alleges that the defendants failed to protect him from repeated physical and sexual assaults by other inmates and subjected him to unconstitutional conditions of confinement based on exposure to secondhand smoke. *Id*. The defendants move for summary judgment on all claims. Docs. 77; 77-1 at 1-2. For the following reasons, the defendants' motion (Doc. 77) is **GRANTED** in part and **DENIED** in part. Vass's failure-to-protect claim against Defendant Martin survives based on Vass's testimony that he was held at knifepoint by his cellmate after Martin failed to confiscate the inmate's weapons; the defendants are otherwise entitled to summary judgment on all claims.

# I. BACKGROUND[1]

## A. Factual Background

Vass was incarcerated at BSP, a medium security prison, from April 25, 2019 until March 15, 2022.  Docs. 77-2 ¶ 1; 78-1 ¶ 1.  During this time, Whipple was both the BSP grievance coordinator and Chief Counselor.  Docs. 77-2 ¶ 4; 78-1 ¶ 4.  Berry has been BSP Warden since December 1, 2020, and Martin was BSP Deputy Warden of Security from August 1, 2019 until November 19, 2022.  Docs. 77-2 ¶¶ 2-3; 78-1 ¶¶ 2-3. According to Vass, the conditions at BSP were extremely violent and inmates often possessed drugs and weapons, which the defendants allegedly failed to confiscate. Docs. 61 ¶¶ 9-11, 26-27; 77-7 at 35:4-19, 36:4-22.  Because of that, Vass alleges, without specificity, that he was continually assaulted by other inmates.  *See*, *e.g.*, Doc. 61 at 2, ¶ 89.  Vass also alleges, as he characterizes it in his brief, a "conditions of confinement claim based on secondhand smoke."  Doc. 78-3 at 4.  These allegations span a period of more than two years, although the incidents identified as the basis for Vass's claims seem to have occurred sometime during the winter of 2020-2021.  *See* Doc. 77-7.  Accordingly, the Court organizes the facts by the claims and defenses, as best the Court can tell, they are intended to support.

### 1.  *Baldwin State Prison*

During Vass's incarceration at BSP, several security measures were in place to address contraband and violence among inmates.  *See*, *e.g.*, Docs. 77-2 ¶¶ 13, 25-26, 38; 78-1 ¶¶ 13, 25-26, 38.  Vass does not deny that these measures were in place but claims they were not followed.  Docs. 77-2 ¶¶ 13, 25-26, 38; 78-1 ¶¶ 13, 25-26, 38.

---

[1] Unless otherwise stated, these facts are undisputed and are from the defendants' statement of facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Relevant here, Vass testified that the dangerous conditions at BSP occurred in the general population dormitories, specifically dormitories in M and G buildings, because they were "overly populated with gangs" and because of copious contraband. Doc. 77-7 at 19:9-22, 33:15-16, 36:12-14, 79:22-80:13.  Vass claims there were numerous gangs at BSP, but the majority were Blood gang members, with whom he had most of his problems.  *Id.* at 18:17-21, 19:21-23.  When asked why he had issues with Blood members, Vass said he did not know.  *Id.* at 19:24-20:1.  Vass, who does not belong to a gang, also testified that inmates who are not affiliated with a gang are targeted.  *Id.* at 18:6-7, 20:1-7; *see also* 77-2 ¶ 45; 78-1 ¶ 45.  To minimize violent incidents, Berry and Martin claim that BSP has a stratified housing plan to avoid a high concentration of inmates with known gang, also called security threat group ("STG"), affiliations in any given housing unit.[2]  Docs. 77-2 ¶ 5; 77-3 ¶ 8; 77-4 ¶ 4; 78-2 ¶ 5.  Vass admits that housing decisions are based on several factors articulated by the defendants, which the defendants claim includes an inmate's medical history, disciplinary history, and STG status.  Docs. 77-2 ¶¶ 5, 13; 78-1 ¶¶ 5, 13.  Vass "denies that all of the factors utilized by [the] Defendants are in accordance with GDC policies."  Doc. 78-1 ¶ 13.

Vass also admits that contraband is prohibited.  Docs. 77-2 ¶ 25; 78-1 ¶ 25.  Inmates with contraband are supposed to be disciplined, although Vass claims they are not.  Docs. 77-2 ¶ 29; 77-3 ¶ 26; 78-1 ¶ 29; *see also* Doc. 77-7 at 69:23-25 (acknowledging inmates are sometimes written up for contraband).  According to Berry,

---

[2] According to Berry, "corrections research and practice dictate that the safest available housing strategy is to spread validated STG inmates from different STG's or gangs among the various BSP living units." Doc. 77-3 ¶ 11.  This means nonaffiliated STG inmates are necessarily housed with STG affiliated inmates.  *Id.*

officers are supposed to conduct security searches at least once a month, called
"shakedowns," to detect and confiscate contraband. Doc. 77-3 ¶ 24. During
shakedowns, every inmate's cell is supposed to be searched from "top to bottom." *Id*.
Vass acknowledges that officers did shakedowns but testified that some officers,
including Martin, left drugs and weapons in the dormitories. Doc 77-7 at 36:4-22, 42:1-
15, 70:3-8. Martin claims he and his security staff did not allow inmates to keep
contraband and that if discovered, it was immediately confiscated. Doc. 77-4 ¶ 7.
Unlike Berry and Martin, Whipple has no supervisory authority over security staff and is
not a member of the security staff. Docs. 77-2 ¶ 36; 77-7 at 69:16-19; 78-1 ¶ 36. As a
result, she is not involved in conducting searches or confiscating contraband. Docs. 77-
2 ¶ 37; 78-1 ¶ 37.

### 2. *Vass's failure-to-protect claims*

Although Vass makes broad allegations of violence, his amended complaint
alleges only two specific assaults on Vass.[3] First, Vass claims he was housed with an
inmate, a Blood member, "[who] had six knives." Doc. 77-7 at 45:24-46:2, 46:19-23;
*see also* Doc. 61 ¶ 74. Vass testified "[Martin] came in the room, saw the knives and
walked back out." Doc. 77-7 at 44:24-45:2. According to Vass, "he had an altercation
with [this] cellmate" when the inmate "'approached' him and [Vass] … defended
himself." Docs. 77-2 ¶ 49; 77-7 at 47:6-11; 78-1 ¶ 49. The record does not reveal when
this "altercation" occurred or whether it occurred before or after Martin allegedly saw
knives and failed to confiscate them. Doc. 77-7 at 45:24-46:2, 46:19-47:12. After the
incident, Vass claims he put himself into protective custody by refusing housing, where

---

[3] Vass also refers to only two specific incidents in his response to the defendants' motion, although only
one of those incidents was alleged in his complaint. Docs. 61 ¶¶ 96-97; 77-7 at 61:14-17; 78-3 at 5-7.

he would be put into a cell with only one other inmate.[4]  Docs. 77-2 ¶ 50; 77-7 at 26:4-12, 29:15-19; 78-1 ¶ 50.  Vass claims he spent most of his time at BSP in protective custody.  Doc. 77-7 at 26:4-12.  Vass also claims he told Martin and Whipple about the altercation.  *Id.* at 48:1-10.  However, in his response to the defendants' motion for summary judgment, Vass does not argue that this altercation gives rise to a failure-to-protect claim, presumably because there is no evidence that any defendant was aware, prior to the assault, of this specific threat to Vass.  Doc. 78-3 at 5-7.

Second, Vass alleges he was held at knifepoint by a different cellmate, also a Blood gang member, and was forced to spit in the anus of another inmate.  Docs. 61 ¶¶ 80, 96-97; 77-7 at 50:4-51:12, 61:25-62:10; 78-2 ¶ 3; 79-1 ¶ 3.  Vass testified that a week or two before this incident, Martin walked into his cell, saw his cellmate armed with knives, and left without confiscating the weapons.[5]  Doc. 77-7 at 61:25-62:10, 62:16-63:3.  Vass claims Martin jokingly told the inmate to hide the weapons in his rectum.  *Id.* at 62:16-63:3.  Vass also claims he asked Martin over 10 times to move him to another location, although Vass cannot remember when he made these requests.[6]

---

[4] Although Vass testified that isolation is different than protective custody, he uses the terms interchangeably throughout his deposition.  Because Vass's deposition makes clear that he was placed in a cell with another inmate when he "refused housing," the Court uses the term "protective custody."

[5] It is difficult to tell from the amended complaint which assault followed this discovery of knives.  Vass testified to, and his brief argues, the version stated here.

[6] To receive a different housing assignment, Berry indicates that inmates must report specific threats from an identifiable source because without this information "officials cannot respond in a way that eliminates or reduces the threat."  Doc. 77-3 ¶ 21.  While Vass "admits that insufficient information would impede the [d]efendants' ability to intervene and provide [inmates] alternative housing," he denies the defendants' claims that he never reported a threat from an identifiable source.  Doc. 78-1 ¶ 22.  Specifically, Vass claims he reported the dangerous conditions in general population to the defendants orally and in writing through over thirty written grievances.  Doc. 77-7 at 66:3-19.  But most of these grievances concern only Vass's medical care.  *See* Docs. 48-2 at 30-31; 56 at 5-11.  In other words, they do not report a threat from an identifiable source.  Doc. 48-2 at 33-120.

*Id.* at 54:15-25.  After the incident, Vass "put himself back in [protective custody]" and told Martin and Whipple, but not Berry, about the attack.  *Id.* at 51:12-22.

Vass testified about a third incident, but his amended complaint does not allege a failure-to-protect claim arising from that incident.  The Court recounts it because of its possible relevance to Vass's claim arising from generally violent prison conditions.[7] While in protective custody, Vass claims he woke up and his cellmate, an inmate named Lee, was standing over him masturbating.  *Id.* at 57:11-14, 58:11-17.  Vass claims he immediately reported the incident and staff "immediately came in and moved [Vass] to another cell."  *Id.* at 58:21-23.  Vass's complaint was then "investigated by BSP's Sexual Assault Response Team ('SART')," who recommended the complaint be dismissed, in part, because Vass "denied that he was being sexually assaulted or harassed."  Doc. 77-6 ¶¶ 3, 10, at 47.  It is not clear if the defendants dispute that Vass initially reported that Lee was standing over him masturbating.  The SART report states that Vass alleged "Lee, stood in the cell window, waited until staff walked by, and attempted to masturbate," but it is unclear if this refers to Vass's initial complaint or if this information was later provided by Vass.  *Id.* ¶ 10, at 47.

   *3. Vass's conditions-of-confinement claims*

While housed in M-1 and M-4 dormitories, Vass claims he was constantly exposed to secondhand smoke from methamphetamine, cigarettes, marijuana, and burning paper.  Docs. 61 ¶ 18; 77-7 at 24:23-25:5, 25:15-24, 30:8-21.  Vass, who claims to have chronic asthma, testified he told both Martin and Whipple about the smoke.  Doc. 77-7 at 27:1-14, 28:16-24, 31:5-10.  Vass admits that smoking was prohibited at

---

[7] However, as noted below, Vass abandoned that claim.

BSP but claims the defendants took no action to reduce his exposure to smoke or eliminate illicit drug use within the prison despite being aware of his asthma. Docs. 77-2 ¶¶ 25-26; 77-7 at 27:13-14, 28:7-25, 29:22-25; 78-1 ¶¶ 25-26. Because of that, Vass claims he would refuse housing in order to be placed in protective custody. Doc. 77-7 at 28:18-29:5, 29:15-19.

Vass claims he had multiple asthma attacks upon arrival to BSP and that his asthma has been exacerbated forcing him to use multiple asthma pumps per day.[8] *Id.* at 30:22-25, 31:2-10, 31:16-32:16.

## B. Procedural History

Vass originally filed this action pro se and asserted claims for deliberate indifference to serious medical needs in addition to his failure-to-protect and conditions-of-confinement claims. Doc. 1. After the Court screened Vass's initial complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Vass's failure-to-protect claims to proceed but dismissed all other claims without prejudice. Docs. 13; 19. Vass retained counsel on July 6, 2022, and through counsel, moved to amend his complaint and attached a proposed amended complaint. Docs. 43; 44; 44-1. Vass's proposed amended complaint reasserted his failure-to-protect claims and renewed his claims for deliberate indifference to a serious medical need and for cruel and unusual conditions of confinement. Docs. 44-1; 47; 60; 61. The Court granted Vass's motion to amend on July 15, 2022. Doc. 47. Before Vass filed the proposed amended complaint, the

---

[8] It is unclear if Vass suffered multiple asthmas attacks upon his arrival to BSP. Vass's amended complaint alleges that "[f]or several weeks Mr. Vass had perpetual asthma attacks and breathing fits because of the compromised air quality within Baldwin State Prison." Doc. 61 ¶ 19. When asked about this allegation at his deposition, Vass stated that he had multiple "panic attacks" and that he needed to get fresh air. Doc. 77-7 at 31:11-25. Vass then said "Well, it's in my medical chart … I can't remember the exact days, but I had multiple, you know, asthma attacks." *Id.* at 32:13-15.

defendants successfully moved to dismiss Vass's deliberate indifference to medical needs claims and some of his conditions-of-confinement claims because he failed to exhaust administrative remedies.  Docs. 48; 58.  Only Vass's conditions-of-confinement claims based on second-hand smoke exposure and failure-to-protect claims remain. Docs. 58; 61.

Months passed and Vass had not filed the amended complaint and the Court ordered him to do so.  Doc. 60.  Vass's attorney moved to withdraw claiming the case was no longer profitable without Vass's medical needs claim.  Doc. 64.  The Court denied the motion.  Doc. 65.  On January 29, 2024, the defendants moved for summary judgment on Vass's remaining claims.  Doc. 77.  Vass's attorney failed to timely respond, and a response was filed after the deadline to respond expired.  Doc. 78.  The defendants argue that Vass's response should be rejected because he "has not provided good cause for failing to submit a timely response."  Doc. 79 at 1.  They are likely right, but even so, the Court will consider Vass's response.

## II. STANDARD

A Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[]—that is, point[] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* at 1438 (quoting *Celotex*, 477 U.S. at 324) (alterations in original).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id*.

The burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), "the court may … consider the fact undisputed for purposes of the motion[.]"  Fed. R. Civ. P. 56(e)(2).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

The defendants move for summary judgment on Vass's remaining conditions-of-confinement claims and his failure-to-protect claims. Doc. 77. The defendants argue they are entitled to summary judgment on all claims because (1) any claim based on an alleged sexual assault is barred by 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies; and (2) they are entitled to qualified immunity because they were not deliberately indifferent to a substantial risk of serious harm and, even if they were, they did not violate clearly established law.[9] Doc. 77-1 at 1-2, 13-14. The Court finds that the defendants forfeited their exhaustion argument by failing to assert it in their motion to partially dismiss Vass's amended complaint. *See* Doc. 48. Vass's failure-to-protect claim against Martin survives based on Vass's testimony that he was held at knifepoint by his cellmate after Martin failed to confiscate the cellmate's weapons. Doc. 77-7 at 61:25-63:22. The defendants are otherwise entitled to summary judgment on all claims.

### A. Administrative Exhaustion

To the extent Vass "bases his failure to protect claim on alleged sexual assault," the defendants argue "that claim is barred because [Vass] failed to exhaust his administrative remedies."[10] Doc. 77-1 at 13-14. This argument is treated as if it were raised in a motion to dismiss. *See Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (explaining that "an exhaustion defense…is not ordinarily the proper subject for a

---

[9] Although the defendants' initial brief makes no attempt to distinguish between Vass's claims when discussing the issue of qualified immunity, their reply brief makes clear that they are arguing they are entitled to qualified immunity for both Vass's failure-to-protect and conditions-of-confinement claims. Docs. 77-1 at 21-22; 79 at 9-10.

[10] Because Vass is an inmate, he's subject to the Prison Litigation Reform Act's ("PLRA") exhaustion requirement. *See* 42 U.S.C. § 1997e.

summary judgment; instead; it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment") (citations omitted).  Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "[W]hen a state provides a grievance procedure for its prisoners … an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir.2005) (internal quotation marks and citation omitted).

According to the defendants, Georgia provides an administrative process for inmates who complain of sexual assault through "its Prison Rape Elimination Act ('PREA') Sexually Abusive Behavior Prevention and Intervention Program."  Doc. 77-1 at 14.  Because Vass "did not file any PREA complaints alleging that he had been sexually assaulted or abused by another inmate at BSP," the defendants argue that any claim based on an alleged sexual assault is barred by § 1997e(a).  *Id*.  However, the defendants abandoned this argument.  Rule 12(g)(2) provides, "[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).  Applying Rule 12(g)(2), the Eleventh Circuit has held, "a defendant must raise the exhaustion defense in his first Rule 12 motion, otherwise the defense is forfeited and cannot be raised in a later motion under Rule 12."  *Brooks v. Warden*, 706 F. App'x 965, 969 (11th Cir. 2017).  Because the defendants failed to raise this argument in their partial motion to dismiss Vass's amended complaint, they forfeited this argument, and summary judgment as to this issue is **DENIED**.

**B. Qualified Immunity**

Even if Vass could establish a violation of his constitutional rights, the defendants argue his claims fail because they are entitled to qualified immunity. Docs. 77-1 at 2, 21-22; 79 at 2, 9-10.

The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Although qualified immunity provides government officials with a formidable shield, their entitlement to raise that shield is not automatic … the official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). Here, Vass has not, and could not, argue that the defendants were acting outside the scope of their discretionary authority. Thus, the defendants are entitled to raise the shield of qualified immunity.

To overcome a qualified immunity defense, Vass must establish that (1) the facts, viewed in his favor, establish a constitutional violation as to each defendant; and (2) the unconstitutionality of the defendants' conduct was clearly established at the time of the alleged violation. *Nelson v. Tompkins*, 89 F.4th 1289, 1296 (11th Cir. 2024) (citing *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019)).

This two-step analysis may be done in whatever order is deemed most appropriate for the case, yet "it is 'often beneficial' to analyze them sequentially." *King v. Pridmore*, 961 F.3d 1135, 1142 (11th Cir. 2020) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014)); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

1. *Vass's failure-to-protect claims*

Under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir.2014); *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). To survive summary judgment on his failure-to-protect claims, Vass must produce sufficient evidence of: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation.[11] *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013); *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal citation omitted). To prevail, an inmate must show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane,*

---

[11] This causal connection requires proof that the defendant "(1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which he nevertheless disregarded." *Nelson*, 89 F.4th at 1298 (quoting *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 622 (11th Cir. 2007)).

835 F.3d at 1307).  Courts "ask whether a reasonable jury could find that the [inmate] encountered 'a strong likelihood, rather than a mere possibility,' of grievous injury." *Nelson*, 89 F.4th at 1296 (quoting *Brown v. Hughes*, 894 F.2d 1533,1537 (11th Cir. 1990)).  Inmates can make this showing by demonstrating either a "general threat" to inmates based on dangerous conditions in the prison or particular area of the prison, or by an individualized risk based on a "specific threat" to the prisoner.  *Marbury*, 936 F.3d at 1233, 1235; *see also Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005).

To establish the second element—deliberate indifference—an inmate:  (1) "must prove that the official was subjectively aware that the inmate was at risk of serious harm"; (2) "must show that the official disregarded that risk"; and (3) "must prove that the [official] acted with 'subjective recklessness as used in the criminal law.'"  *Wade v. McDade*, 106 F.4th 1251, ___, 2024 WL 3354963, at *2 (11th Cir. July 10, 2024) (quoting *Farmer*, 511 U.S. at 839).

Subjective awareness requires that the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citing *Farmer*, 511 U.S. at 837).  "Whether a prison official had the requisite knowledge … is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."  *Farmer*, 511 U.S. at 842.  The trier of fact may, therefore, "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Id*.  The determination of whether a risk has been disregarded is objective: "the official must have responded to the known risk in an unreasonable manner."  *Marbury*, 936 F.3d at 1233 (citation omitted); *Wade*, 106 F.4th

at ___, 2024 WL 3354963, at *6.  In other words, if the defendant responds reasonably to the risk, even a known risk, he cannot be held liable under the Eighth Amendment. *Wade*, 106 F.4th at ___, 2024 WL 3354963, at *2.  To establish that "the [official] acted with 'subjective recklessness as used in the criminal law'" requires proof "that the [official] was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm."  *Wade*, 106 F.4th at ___, 2024 WL 3354963, at *2 (quoting *Farmer*, 511 U.S. at 839).

The Court addresses briefly Vass's failure-to-protect claims arising from generally violent prison conditions and then turns to his failure-to-protect claims based on specific threats against each defendant.  Vass has abandoned any claim based on general violence at BSP.[12]  Regardless, the record shows at most that inmates faced some risk of assault by other inmates at BSP, but that is not enough.  *Marbury*, 936 F.3d at 1234-35 (collecting cases).  To establish a claim based on generally dangerous prison conditions, a plaintiff must show that he faced a "constant threat of violence." *Purcell*, 400 F.3d at 1321.  Inmates cannot simply rely on "occasional [or] isolated attacks by one prisoner on another" but rather must prove "confinement in a prison where violence and terror reign."  *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting *Purcell*, 400 F.3d at 1320).  This requires the inmate to point to specific features of a facility or its population rendering it particularly violent.  *Marbury*, 936 F.3d at 1235.

---

[12] The defendants argue Vass fails to establish a failure-to-protect claim based on generally violent prison conditions.  Doc. 77-1 at 14-16.  Vass did not respond to this argument.  Doc. 78-3 at 5-7.  Thus, he has abandoned any claim based on general violence at BSP.  *See Coal. For the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000); *see also Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014).

Although Vass testified that he witnessed several attacks and/or assaults while incarcerated at BSP and was himself assaulted on several occasions, "[t]here is no evidence in the record of the total prison population or the sections of the prison in which the attacks occurred that would place [Vass]'s statement in context." *Marbury*, 936 F.3d at 1235 (explaining that prisoner's statement about the 15 stabbings lacked context because he failed to provide evidence about the size of the prison, where the attacks took place, or the timeframe of the attacks); *see also Harrison*, 746 F.3d at 1300-1302 (affirming grant of summary judgment to prison officials where evidence showed that 33 incidents involving weapons occurred during the relevant time period among population of 800 inmates but only four incidents took place in the area where the prisoner was attacked); Doc. 77-7 at 65:2-23. Accordingly, Vass has failed to show that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm, and he could not sustain a claim on this basis. Hence, no doubt, his abandonment of that claim.

a. Deputy Warden Martin

Vass claims Martin violated his constitutional rights by failing to confiscate weapons from inmates during shakedowns. Doc. 77-7 at 22:9-22. There is sufficient evidence to survive summary judgment on Vass's claim that Martin failed to protect him from one alleged assault.

First, Vass testified that Martin entered his cell, saw his cellmate with knives, and left the cell without confiscating them. *Id.* at 61:25-62:9, 62:16-63:12. Vass claims Martin jokingly told the inmate to hide the weapons in his rectum. *Id.* at 62:16-22. A week or two later Vass was held at knife point by this cellmate and forced to spit in the anus of another inmate. Docs. 77-7 at 50:4-15, 50:24-51:14, 62:1-22; 78-2 ¶ 3; 79-1 ¶

3.  If Vass's testimony is true, then Martin had the means to protect Vass's safety by confiscating his cellmate's weapons; Martin surely knew that failing to confiscate the weapons would be insufficient to reasonably protect Vass from violence; and Martin had other means available to him—i.e., confiscating the weapons—which he nevertheless disregarded.  *See Rodriguez*, 508 F.3d at 625.  Thus, a reasonable jury could find from Vass's testimony that (1) Martin was subjectively aware of a substantial risk of serious harm to Vass; (2) Martin unreasonably disregarded that risk; and (3) Martin was subjectively aware that his own conduct put Vass at substantial risk of serious harm. *Wade*, 106 F.4th at ___, 2024 WL 3354963, at *2, 6.  Aside from this incident, there is no evidence that Martin was subjectively aware of a specific threat to Vass before an alleged assault.

Second, at the time of the assault on Vass, it was clearly established that "prison officials have a duty" under the Constitution to take reasonable action "to protect prisoners from violence at the hands of other prisoners."  *Nelson*, 89 F.4th at 1299 (quoting *Bowen*, 826 F.3d at 1320); *see Patel v. Lanier Cnty., Ga.*, 969 F.3d 1173, 1190 (11th Cir. 2020) (holding "broad [deliberate indifference] principle[s] ha[ve] put all law-enforcement officials on notice that if they actually know about a condition that poses a substantial risk of serious harm and yet do nothing to address it, they violate the Constitution.").  In other words, it was clearly established that telling Vass's cellmate to hide his knives instead of confiscating them violated Vass's clearly established rights. *See Nelson*, 89 F.4th at 1289 (collecting cases).  Thus, Martin is not entitled to qualified immunity.

Accordingly, the motion for summary judgment on Vass's failure-to-protect claim against Martin (Doc. 77) is **DENIED**, but Vass's claim is limited as discussed.

b.  Warden Berry and Chief Counselor Whipple

Berry and Whipple are entitled to summary judgment on Vass's failure-to-protect claims.  First, Vass does not identify a specific assault for which they are responsible.  Second, there is no evidence that either Berry or Whipple had subjective knowledge of any specific threat to Vass prior to an assault.  Docs. 77-3 ¶¶ 28-29; 77-5 ¶¶ 5-6.  Although Vass claims he constantly made complaints to the defendants about violence at BSP, these vague complaints are not enough.[13]  Doc. 77-7 at 37:4-16.  Without specific information about when Vass's complaints were made to the defendants, what the complaints were, and when, in relation to those complaints, Vass was assaulted, it is impossible to conclude that either Berry or Whipple had the requisite knowledge to support a failure-to-protect claim.

The motion for summary judgment on Vass's failure-to-protect claims against Berry and Whipple (Doc. 77) is **GRANTED**.

2. *Vass's conditions-of-confinement claims*

Vass asserts a claim for unconstitutional conditions of confinement based on exposure to secondhand smoke.  Doc. 61; *see also* Doc. 78-3 at 5.  Vass does not allege or argue an Eighth Amendment claim for exposure to environmental tobacco smoke ("ETS").  However, the framework for analyzing ETS claims is instructive.

An inmate can state a § 1983 claim for ETS exposure by "alleging [with appropriate factual support] that [prison officials] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health."  *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  First, the inmate must

---

[13] Vass claims he "probably had a complaint every three or four days, maybe once a week" and "would constantly approach them," i.e., the defendants.  Doc. 77-7 at 37:4-16.

show, objectively, that "he himself [was] exposed to unreasonably high levels of ETS." *Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir.2005); *see also Morefield v. Brewton*, 442 Fed. Appx. 425, 427 (11th Cir. 2011).  "Relevant factors include whether the facility has enacted a formal smoking policy, the 'likelihood that such injury to health will actually be caused by exposure to ETS,' and 'whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" *Morefield*, 442 Fed. App'x at 427 (quoting *Kelley*, 400 F.3d at 1284).  The likelihood of actual injury considers "a scientific and statistical inquiry into the seriousness of the potential harm and the [probability] that such injury to health will actually be caused by exposure to ETS." *Helling*, 509 U.S. at 35-36; *Kelley*, 400 F.3d at 1284.  Second, the inmate must show that the defendants were deliberately indifferent to this risk. *Kelley*, 400 F.3d at 1284.  Again, this requires that the defendants knew of and subjectively disregarded an excessive risk to inmate health or safety. *Wade*, 106 F.4th at ___, 2024 WL 3354963, at *2, 6.  Of course, underlying both elements in ETS claims is the established fact that tobacco smoke is a known carcinogen.

Here, Vass's claim fails because there is no evidence that his exposure to smoke was sufficiently harmful to meet the objective prong of the Eighth Amendment.  There is no evidence about the levels of smoke to which Vass was exposed, the specific constituents of that smoke, or the harmful effect of those constituents.[14]  Thus, there is no evidence to substantiate whether "smoke" was likely to cause actual injury.

---

[14] Vass's attorney filed several one-page affidavits from various inmates claiming they were exposed to air contaminants during their incarceration at BSP.  Docs. 78-5; 78-6; 78-6.  However, none of these affidavits state when the affiant was incarcerated, among other things, and therefore they fail to create a genuine dispute of material fact.  Nor do they establish the level of smoke to which Vass was exposed.

Moreover, Vass testified that the dormitories were constantly smoky, but Vass spent most of his time at BSP in protective custody.  Doc. 77-7 at 24:23-25:24, 26:4-18, 30:8-25.  Occasional and incidental exposure to smoke, without more, does not rise to the level of a constitutional violation.  *Kelley*, 400 F.3d at 1285 (citing *Oliver v. Deen*, 77 F.3d 156, 158 (7th Cir.1996) (holding that passive tobacco exposure was not a serious threat to an inmate with a smoking cellmate for 133 days, even though the plaintiff suffered from mild asthma)).  "Thus, [Vass] fails to objectively show that he was exposed to unreasonably high levels of [smoke] and that the risk to his health was so 'grave' as to 'violate contemporary standards of decency.'" [15]  *Kelley*, 400 F.3d at 1285.

Because Vass fails to present evidence of a substantial risk to his health due to smoke exposure, his claims fail, and the Court does not address whether the defendants were deliberately indifferent and/or whether they are entitled to qualified immunity.  Accordingly, the defendants' motion for summary judgment on Vass's conditions-of-confinement claims (Doc. 77) is **GRANTED**.

### IV. CONCLUSION

For these reasons, the defendants' motion for summary judgment (Doc. 77) is **GRANTED** in part and **DENIED** in part.  The motion for summary judgment on Vass's failure-to-protect claim against Martin (Doc. 77) is **DENIED** based on Vass's testimony that he was held at knifepoint by his cellmate after Martin failed to confiscate the inmate's weapons.  The motion for summary judgment on Vass's failure-to-protect claims against Berry and Whipple (Doc. 77) is **GRANTED**.  The motion for summary

---

[15] *See Cassady v. Donald*, 447 Fed. Appx. 28, 31 (11th Cir. 2011) (explaining plaintiff's claim in *Kelley* failed because "the only evidence the inmate provided was 'personal observations of smoke inside the prison' and his personal opinion that the ventilation in the prison was inadequate").

judgment on Vass's conditions-of-confinement claims against all defendants is also

**GRANTED**.  Vass's failure-to-protect claim against Martin is the only claim that remains.


        **SO ORDERED**, this 6th day of August, 2024.

                                        S/ Marc T. Treadwell
                                        MARC T. TREADWELL, JUDGE
                                        UNITED STATES DISTRICT COURT